1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                     FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   NANETTE MARGUREITE PUCKETT,              No.  2:19-cv-01226-AC

11              Plaintiff,

12        v.                                  ORDER

13   ANDREW SAUL, Commissioner of Social
     Security,
14
                Defendant.
15

16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner"), partially denying her application for disability insurance benefits ("DIB")

19   under Title II of the Social Security Act, 42 U.S.C. § 401-34, and for Supplemental Security

20   Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1381-1383f.[1]

21        For the reasons that follow, the court will GRANT plaintiff's motion for summary

22   judgment, DENY the Commissioner's cross-motion for summary judgment, and remand this case

23   for further proceedings consistent with this order.

24   _____

25   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
26   York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
     § 1382(a); Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler,
27   537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security
     Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children,
28   whose income and assets fall below specified levels . . .").

                                           1

I.   PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and for supplemental security income on March 31, 2015.  Administrative Record ("AR") 230-44.[2]  The disability onset date for both applications was alleged to be April 23, 2014.  Id.  The applications were disapproved initially and on reconsideration.  AR 132-45.  On July 12, 2017, ALJ Curtis Renoe presided over the hearing on plaintiff's challenge to the disapprovals.  AR 39-71 (transcript).  Plaintiff appeared with her counsel, Sengthiene Bosavanh, and testified at the hearing.  AR 39.  A Vocational Expert identified only as "Mr. Frank" also testified.  Id.

On November 27, 2017, the ALJ issued a partially favorable decision, finding plaintiff "disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A) beginning October 6, 2017, but not disabled between the onset date of April 23, 2014 and October 6, 2017. AR 16-33 (decision), 35-38 (exhibit list).  On May 2, 2019, after receiving a Request for Review dated January 9, 2018 as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision).

Plaintiff filed this action on July 2, 2019.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 5, 6.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 13 (plaintiff's summary judgment motion), 16 (Commissioner's summary judgment motion).

II.  FACTUAL BACKGROUND

Plaintiff was born in July of 1961, and accordingly was 52 years and 9 months old on the alleged disability onset date (April 23, 2014), making her an "individual closely approaching advanced age" under the regulations.  AR 31, 72; see 20 C.F.R §§ 404.1563(d), 416.963(d) (same).  The ALJ found that "[s]ince the established disability onset date of October 6, 2017, the claimant's age category has changed to an individual of advanced age," 55 years or older.  AR 31;

---

[2]  The AR is electronically filed at ECF Nos. 8-3 to 8-13 (AR 1 to AR 578).

1   see 20 C.F.R §§ 404.1563(e), 416.963(e) (same).  Plaintiff has at least a high school education,

2   and can communicate in English.  AR 31.

### III.  LEGAL STANDARDS

4        The Commissioner's decision that a claimant is not disabled will be upheld "if it is

5   supported by substantial evidence and if the Commissioner applied the correct legal standards."

6   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

7   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

8   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

9        Substantial evidence is "more than a mere scintilla," but "may be less than a

10  preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

11  evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

12  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

13  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

14  suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

15       Although this court cannot substitute its discretion for that of the Commissioner, the court

16  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

17  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of Health &

18  Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th

19  Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from

20  the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting

21  evidence.").

22       "The ALJ is responsible for determining credibility, resolving conflicts in medical

23  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

24  2001), as amended on reh'g (Aug. 9, 2001).  "Where the evidence is susceptible to more than one

25  rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

26  upheld."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review

27  only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon

28  which he did not rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart,

1 | 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's

2 | credibility decision based on evidence that the ALJ did not discuss").

3 |      The court will not reverse the Commissioner's decision if it is based on harmless error,

4 | which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

5 | ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

6 | 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see

7 | also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

8 | IV.  RELEVANT LAW

9 |      Disability Insurance Benefits and Supplemental Security Income are available for every

10 | eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is

11 | "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

12 | determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

13 | (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

14 |      The Commissioner uses a five-step sequential evaluation process to determine whether an

15 | applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

16 | Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003) (setting forth the "five-step sequential evaluation

17 | process to determine disability" under Title II and Title XVI).  The following summarizes the

18 | sequential evaluation:

19 |      Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 | 20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

22 |      Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

23 | Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

24 |      Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

26 | Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

28 |      Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not

4

1  disabled.  If not, proceed to step five.

2  Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

3          Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not,
4  the claimant is disabled.

5  Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

6        The claimant bears the burden of proof in the first four steps of the sequential evaluation

7  process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

8  disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

9  sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

10  disabled and can engage in work that exists in significant numbers in the national economy."  Hill

11  v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

12  V.  THE ALJ's DECISION

13       The ALJ made the following findings:

14          1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

15

16          2. [Step 1] The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.)

17

18          3. [Step 2] Since the alleged onset date of disability, April 23, 2014, the claimant has had the following severe impairments: abdominal pain secondary to multiple abdominal/pelvic related surgeries in the
19  past, mild osteoarthritis of the bilateral hands, and bipolar disorder with depression and PTSD (20 CFR 404.1520(c) and 416.920(c)).

20

21          4. [Step 3] Since the alleged onset date of disability, April 23, 2014 to October 5, 2017, the claimant has not had an impairment or combination of impairments that meets or medically equals the
22  severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
23  416.920(d), 416.925 and 416.926).

24          5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that prior to October 6, 2017, the date
25  the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR
26  404.1567(c) and 416.967(c) except the claimant is limited to simple routine tasks, making simple work related decisions, frequent
27  interactions with supervisors and coworkers, and no public interactions.

28

5

6. [Preparation for Step 4]  After careful consideration of the entire record, the undersigned finds that beginning on October 6, 2017, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 25 pounds infrequently and 10 pounds frequently; stand and walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday and assistive device was not required at this time; able to stoop, crouch, and kneel for 6 hours in an 8-hour workday but climbing was limited; able to reach, handle, finger, feel and grasp as necessary on a daily basis but should not manipulate ropes or use scaffolds; and should avoid the operation of heavy equipment and working at unprotected height and in extreme cold.

7. [Step 4] Since April 23, 2014, the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. [Step 5] Prior to the established disability onset date, the claimant was an individual closely approaching advanced age at the alleged onset date of April 23, 2014. Since the established disability onset date of October 6, 2017, the claimant's age category has changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

9. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. [Step 5, continued] The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

11. [Step 5, continued] Prior to October 6, 2017, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on October 6, 2017, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12. Prior to October 6, 2017, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a,416.969, and 416.969a).

13.  Beginning on October 6, 2017, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c),404.1566, 416.960(c), and 416.966).

14.  The claimant was not disabled prior to October 6, 2017, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 19-32.

1    As noted, the ALJ concluded that plaintiff was "not disabled" between April 23, 2014 and

2    October 5, 2017, under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i),

3    423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 32.

## VI.  ANALYSIS

5    Plaintiff alleges that the ALJ erred in multiple ways with respect to his conclusion that she

6    was not disabled for over three years after her alleged onset date, and asks the court to review (1)

7    whether the ALJ erred when considering the impact of Plaintiff's abdominal pain on her

8    functioning; (2) whether ALJ failed to consider the debilitating effects of Plaintiff's pain

9    medications; (3) whether the ALJ failed to give clear and convincing reasons for rejecting

10   Plaintiff's testimony; (4) whether Plaintiff's case should be remanded for payment of

11   benefits; (5) whether the ALJ's errors prevent meaningful judicial review; (6) whether the ALJ

12   erred when evaluating the impact of Plaintiff's hand impairment on her functioning; and (7)

13   whether the ALJ erred when rejecting limitations caused by post-concussive syndrome.  ECF No.

14   13 at 16.

15   A.  Consideration of Plaintiff's Abdominal Pain/Impact of Medication on Functioning

16   Plaintiff's first three claims of error are briefed together in her motion, making them

17   difficult to distinguish from one another.  In summary, she contends that the ALJ did not properly

18   consider her subjective testimony with respect to her abdominal pain and the side-effects of her

19   pain medication.  ECF No. 13 at 18.  The undersigned agrees with respect to plaintiff's testimony

20   regarding medication side-effects, because the ALJ failed to address these at all.

21   Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.  First,

22   the ALJ must "determine whether the claimant has presented objective medical evidence of an

23   underlying impairment which could reasonably be expected to produce the pain or other

24   symptoms alleged . . . In this analysis, the claimant is *not* required to show that her impairment

25   could reasonably be expected to cause the severity of the symptom she has alleged; she need only

26   show that it could reasonably have caused some degree of the symptom."  Garrison v. Colvin, 759

27   F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the

28   pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does not

7

1    find evidence of malingering, the ALJ may only reject the claimant's testimony by offering

2    "specific, clear and convincing reasons for doing so." Id. at 1015 (internal citations omitted).

3           Here, the ALJ erred by failing to address plaintiff's testimony regarding the impairing side

4    effects caused by the medications taken to relieve her pain.  Plaintiff reported that her increased

5    dosage of Norco prevented her from being able to work beginning in 2014.  AR 51.  She testified

6    that her medication impacted her sleep, and that depending on the medication she has taken in a

7    day she may sleep all day or have highly disrupted sleep patterns.  AR 58.  On her adult function

8    report, she wrote that Norco, Synthroid, and Prozac each caused her to experience constipation

9    and diarrhea, and that Hydrochloride caused her problems with frequent urination.  ECF 290.

10   The ALJ simply failed to address any of these issues, and therefore specific and legitimate

11   reasons were not provided for rejecting them.  The ALJ's statement that "[t]he overall medical

12   treatment records, stable medical imageries, medication effectiveness, and claimant's testimony

13   challenge a finding that the claimant is completely credible and show that her physical and mental

14   impairments are not as limiting and debilitating as she alleges" is not enough; there is no specific

15   discussion of side effects in the decision whatsoever.  Thus, remand for further consideration is

16   necessary.

17          With respect to plaintiff's testimony regarding abdominal pain in general, the ALJ's

18   rationale was sufficient.  Plaintiff argues that the ALJ erroneously concluded that plaintiff's

19   allegations of abdominal pain were overstated because examinations had been "within normal

20   limits" and her pain was "stable."  ECF No. 13 at 19.  Plaintiff asserts that the evidence the ALJ

21   cited to show pain stability did not *actually* show stability, and on the contrary showed pain

22   increasing from a 3 out of 10 to a 6 out of 10.  ECF No. 13 at 18-19.

23          Plaintiff's objection here amounts to a challenge to the ALJ's interpretation of the medical

24   evidence.  As stated above, "The ALJ is responsible for determining credibility, resolving

25   conflicts in medical testimony, and resolving ambiguities." Edlund, 253 F.3d at 1156.  "Where

26   the evidence is susceptible to more than one rational interpretation, one of which supports the

27   ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954.  The ALJ cited

28   and interpreted a substantial amount of medical evidence with respect to plaintiff's abdominal

1    pain, and reached a rational conclusion.  AR 25.  With a few exceptions of tenderness, from 2014

2    to 2017, plaintiff's abdomen was generally soft and non-tender with no abnormalities noted and

3    occasional reports from plaintiff denied abdominal pain (AR 384-435, 442-551; see, e.g., AR 399,

4    401, 403, 404-405, 406-407, 410-411, 413, 415, 420, 422, 424, 448, 451, 452-454, 456, 458, 460,

5    468, 498-503, 512, 521, 527).  The ALJ adequately explained his interpretation of the medical

6    record, and the court will not engage in second guessing his interpretation of the evidence.

7            B.  Remand for Further Consideration

8            The undersigned agrees with plaintiff that the ALJ's error of omission regarding her

9    subjective claims of limitations from medication side-effects requires remand for further

10   proceedings by the Commissioner.  An error is harmful when it has some consequence for the

11   ultimate non-disability determination.  Stout, 454 F.3d at 1055.  The ALJ's error in this matter

12   was harmful; plaintiff's allegations that her medication caused sleep disruptions/excess sleeping,

13   nausea, and diarrhea were not addressed at all and may very well have resulted in a more

14   restrictive residual functional capacity assessment, which may in turn alter the finding of non-

15   disability.

16           It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

17   and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

18   (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

19   Security Administration in the first instance, not with a district court").  "Remand for further

20   administrative proceedings is appropriate if enhancement of the record would be useful."

21   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to provide any

22   analysis of plaintiff's testimony regarding the limiting side-effects of pain medication.  Further

23   development of the record consistent with this order is necessary, and remand for further

24   proceedings is the appropriate remedy.

25           C.  Other Issues

26           Though plaintiff bases her motion primarily on the ALJ's treatment of her abdominal

27   pain, she includes a host of other issues that are addressed briefly below.  Because remand is

28   necessary on the issue previously discussed, the court considers which of these issues should be

1   considered further on remand.

2             1.   <u>Impact of Close-in-Time Examiners' Opinions on Disability Onset Date</u>

3          Plaintiff alleges that the ALJ erred by relying on two separate examining physicians (H.

4   Afuwape, D.O., and Robert McElroy, M.D.), who examined plaintiff two months apart, to find

5   that plaintiff was not disabled before the date of the second exam but was disabled after that date.

6   ECF No. 13 at 24.  Plaintiff also asserts that neither physician was a gynecological expert

7   qualified to perform the examination.  <u>Id.</u>  The undersigned finds plaintiff's arguments on this

8   point to be underdeveloped and unpersuasive.

9          The commissioner cites <u>Wellington v. Berryhill</u>, 878 F.3d 867 (9th Cir. 2017), and the

10   court agrees it is instructive here.  In <u>Wellington</u>, the Ninth Circuit discussed when it is

11   appropriate for an ALJ to rely on the available record to determine a disability onset date, and

12   when the record is so ambiguous that a medical advisor must be called to determine the onset

13   date.  The court noted that "[u]nder ordinary circumstances, an ALJ is equipped to determine a

14   claimant's disability onset date without calling on a medical advisor.  <u>Id.</u> at 784.  <u>Wellington</u>

15   explains that under ordinary circumstances, and when the available medical record has no

16   "meaningful gaps" the ALJ can rely on the date of a doctor's examination as the disability onset

17   date and "need not call on a medical advisor when the available evidence clearly could not

18   support an inference of disability onset during a gap in the medical records."  <u>Wellington</u>, 878

19   F.3d at 874.  Plaintiff points to no meaningful gaps in the record, and she does not demonstrate

20   how the record in this case is out of the ordinary.

21          Without more, the court must conclude that the ALJ properly relied on medical opinions

22   to determine the disability onset date.  Similarly, plaintiff's unsupported assertion that the

23   examining physicians were not qualified is an underdeveloped argument; the court declines to

24   find error based on plaintiff's conclusory statement.

25             2.   <u>Factual Errors Regarding Plaintiff's Age Category</u>

26          Plaintiff argues that "The ALJ's statement that Plaintiff became disabled on October 6,

27   2017, because she changed age categories is inaccurate and misleading (Tr. 31).  In fact, Plaintiff

28   changed age categories to an individual of advanced age when she turned 55 years old on July 12,

1    2016 (Tr. 72).  20 C.F.R. §§ 404.1563(e), 416.963(e) (person of advanced age is 55 and older).”

2    ECF No. 13 at 24.  Plaintiff is correct that the ALJ's opinion is unclear as to whether an incorrect

3    understanding of plaintiff's age contributed to changing her RFC in 2017 rather than 2016.  The

4    ALJ said, upon giving great weight to the October 6, 2017 opinion of consultative examiner

5    Robert McElroy, M.D., that “beginning on October 6, 2017, the date the claimant's age category

6    changed, considering the claimant's age, education, work experience, and less than the full range

7    of light residual functional capacity, a finding of 'disabled' is reached by direct application of

8    Medical-Vocational Rule 202.06.”  AR 30-31.  Though it appears the ALJ intended to rely on the

9    date of Dr. McElroy's exam as the turning point for disability, the language of the opinion creates

10   ambiguity as to whether the ALJ actually intended the change in age categories to be a turning

11   point.  This ambiguity must be cured on remand.

12                    3.  Unclear Rejection of Physician Limitation

13         Plaintiff argues that although the ALJ accepted the opinion of physician H. Afuwape,

14   D.O., he implicitly rejected without rationale Dr. Afuwape's conclusion that plaintiff could

15   stand/walk only “Up to six hours.”  ECF No. 13 at 24, AR 562.  Plaintiff claims this is error

16   because the ALJ was required to give specific and legitimate reasons for rejecting the portions of

17   Dr. Afuwape's opinion he did not accept, but instead, without explanation, he found plaintiff

18   capable of medium work as defined by the Regulations and did not include Dr. Afuwape's

19   standing/walking limitation in his hypothetical questioning of the VE.  AR 22-23, 65-66.

20   Plaintiff argues that the record does not indicate whether an individual who cannot be on their

21   feet for eight hours could perform the jobs identified by the VE.  AR 32.

22         Plaintiff's argument is somewhat conclusory and fails to demonstrate reversible error on

23   this point because medium work does not necessarily require eight hours of standing.  The

24   regulations define medium work as, “lifting no more than 50 pounds at a time with frequent

25   lifting or carrying of objects weighing up to 25 pounds.”  20 C.F.R. § 404.1567(c).  Nowhere in

26   the regulations is there a requirement that an individual must be able to stand and walk eight

27   hours to perform medium work.  See 20 C.F.R. § 404.1567(c).  In fact, SSR 83-10 expressly

28   states that the “full range of medium work requires standing or walking, off and on, for a total of

11

1    approximately 6 hours in an 8-hour workday….”  See SSR 83-10, 1983 WL 31251, at \*6.  Also,

2    nowhere is there any indication that the jobs that the VE found require more than six hours of

3    standing or walking.  AR 32, 66.  There is no reversible error on this point.

4              4.    Unclear Findings on Mental Limitations

5          Plaintiff argues that the ALJ committed legal error by not including mental limitations in

6    her RFC beginning October 6, 2017.  Plaintiff is correct that the ALJ omitted mental functional

7    limitations for the RFC starting October 6, 2017.  AR 29.  However, this amounts to harmless

8    error because the ALJ already found Plaintiff disabled based on her physical RFC alone.  AR 29-

9    33, See, Carmickle v. Comm’r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (“‘[T]he

10   relevant inquiry in this context is not whether the ALJ would have made a different decision

11   absent any error, … it is whether the ALJ’s decision remains legally valid, despite such error’”);

12   Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. Jul. 17, 2008) (“the court will not reverse an

13   ALJ’s decision for harmless error, which exists when it is clear from the record that the ALJ’s

14   error was inconsequential to the ultimate nondisability determination’”) (quotations and citations

15   omitted).

16             5.    Inadequate Evaluation of Hand Impairment

17         Plaintiff argues that “[a]lthough the ALJ found Plaintiff’s hand osteoarthritis was severe

18   prior to October 2017, he included no manipulative limitations in his RFC finding for that time

19   frame (Tr. 19, 22).  This is error because by definition Plaintiff’s severe hand impairment caused

20   significant limitations in her ability to do basic work activities.  20 C.F.R. §§ 414.1521(a),

21   416.921(a).”  ECF No. 13 at 25-26.  The court disagrees; there is no authority for the proposition

22   that a severe impairment at step two must cause functional limitations in the RFC.  Bray v.

23   Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228–29 (9th Cir. 2009) (rejecting claimant’s

24   assertion that “by definition” a “severe impairment” must inhibit basic work activities and have

25   RFC accommodation because she “offers no authority to support the proposition that a severe []

26   impairment must correspond to limitations on a claimant’s ability to perform basic work

27   activities”).  The ALJ addressed the medical evidence with respect to plaintiff’s hand limitations,

28   citing normal X-ray studies, indications of pain controlled with medication, and examinations

12

1    with normal or very mild findings.  AR 23-25, 391 (X-Ray shows no significant findings), 404

2    (pain reduction with steroid injections), 448 (negative for rheumatoid factor), 563 (Dr. Afuwape

3    assigns no manipulative limitations) 403, 407-409, 527 (normal exams).  Substantial evidence

4    supported the ALJ's conclusion that plaintiff's hand impairment did not warrant additional

5    restrictions in her RFC.

6                          6.   Unclear Findings on Post-Concussive Syndrome

7                Plaintiff argues that the ALJ failed to properly address plaintiff's post-concussive

8    syndrome, which was diagnosed following a fall that occurred in January of 2017.  ECF No. 13 at

9    36.  The court agrees with the Commissioner that the ALJ permissibly found plaintiff's post

10   concussive syndrome to be non-severe because it did not meet the minimum 12-month duration

11   requirement, at least as of the time of the November 27, 2017 decision.  AR 21.  Under the Rules,

12   an impairment cannot be considered disabling unless it "can be expected to result in death or

13   which has lasted or can be expected to last for a continuous period of not less than 12 months."

14   20 C.F.R. § 416.905(a); 42 U.S.C. § 423(d)(1)(A) (same); see also, Janell S. v. Comm'r of Soc.

15   Sec., No. 1:18-CV-03167-MKD, 2019 WL 6121409, at *6 (E.D. Wash. July 8, 2019) ("Even if

16   this evidence was fully credited, the evidence does not show a reasonable probability that it

17   would change the outcome of the decision because Plaintiff's ankle impairment did not meet the

18   12-month durational requirement for a finding of disability.")

19                Here, the ALJ found that plaintiff had seen a neurologist, Arish Eduljee, M.D., one time

20   on April 21, 2017.  AR 21, 466-69.  Dr. Eduljee submitted a statement dated June 22, 2017

21   opining that plaintiff had been disabled since January of 2017 as a result of her post-concussive

22   syndrome.  AR 552.  Dr. Eduljee did not opine as to how long plaintiff's condition could be

23   expected to last.  Plaintiff argues that "[w]hen the ALJ issued his decision in November 2017, it

24   had been only 10 months since Plaintiff's head injury but there is no evidence her post-concussive

25   headaches and other symptoms had improved" and Dr. Eduljee did not give any indication that

26   the condition would improve in the near term.  ECE No. 13 at 27, citing AR 33, 61 (plaintiff's

27   reference to her concussion and that she cannot concentrate on the TV or computer since her

28   concussion because it leads to migraines).  The inverse of plaintiff's argument is, of course, also

                                                    13

1    true:  Dr. Eduljee gave no indication that the condition could be expected to last over 12 months,

2    and there was no evidence that, by the time of the hearing, the condition had continued, worsened

3    or improved.  Under such circumstances, the ALJ did not err in finding the condition did not meet

4    the minimum duration requirement.

5                                            VII.  CONCLUSION

6           For the reasons set forth above, IT IS HEREBY ORDERED that:

7           1.  Plaintiff's motion for summary judgment (ECF No. 13), is GRANTED and the matter

8    is REVERSED and REMANDED for further consideration as described herein;

9           2.  The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED;

10   and

11          3.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

12   DATED: July 20, 2020

13

14   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                   14